IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19-_____ |
| v. | : | DATE FILED: _____ |
| DOMENICK BRACCIA | : | VIOLATION:<br>18 U.S.C. § 371 (conspiracy to<br>commit health care fraud – 1 count)<br>Notice of forfeiture |
| | : | |

**INFORMATION**

**COUNT ONE**

(Conspiracy)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this indictment:

1. The defendant DOMENICK BRACCIA was a medical doctor with a unique National Provider Identification ("NPI") number assigned to him as a certified medical care provider.

2. Defendant DOMENICK BRACCIA was permitted to use his NPI number to bill, and participate in the billing of, health care benefit programs for legitimate medical services that were rendered to and ordered for patients to whom defendant BRACCIA provided medical care.

3. Independence Blue Cross ("IBC"), and FEHBP Blue Cross plans were private insurance companies and health care benefit programs (collectively, "the Health Care Benefit Programs") as defined in 18 U.S.C. § 24(b), that is, they were private plans and

1

contracts, affecting commerce, under which medical benefits, items, and services were provided to eligible individuals.

4. Liberation Way was an entity which purported to provide treatment for individuals dealing with drug and alcohol addiction. Person #1, Person #2 and Person #3 founded Liberation Way in early 2015. Liberation Way had treatment centers in Yardley, opened in July 2015, Bala Cynwyd, opened in June 2016, and Fort Washington, opened in August 2016, all in the Eastern District of Pennsylvania. Defendant DOMENICK BRACCIA was the "medical director" of all Liberation Way locations.

5. Medical providers providing care and treatment to patients at Liberation Way facilities were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider's NPI number was included as a part of each submission.

6. Defendant DOMENICK BRACCIA never saw or provided medical care to any patients at the Bala Cynwyd Liberation Way facility who were ostensibly under defendant BRACCIA's medical care and treatment, and for whom the Health Care Benefit Programs were billed for defendant BRACCIA's purported medical care and treatment. Defendant BRACCIA did not see or provide care to all patients at the Yardley and Fort Washington Liberation Way facilities who were ostensibly under defendant BRACCIA's medical care and treatment, and for

whom the Health Care Benefit Programs were billed for defendant BRACCIA's purported medical care and treatment.

7. Ramesh Sarvaiya, a medical doctor charged elsewhere, never treated, saw, or provided care to any patient at any Liberation Way facility. Nonetheless, in return for a fee paid by Person #1, Sarvaiya ordered, and participated in the ordering of, urine testing on samples obtained from Liberation Way patients, which urine samples were sent by Liberation Way staff for testing to laboratories in Florida, and which test results were emailed from the laboratories to Liberation Way for inclusion in the medical files of patients ostensibly under the care of defendant DOMENICK BRACCIA.

8. C-Lab, DB-Lab, O-Lab, and AD-Lab were laboratories in the state of Florida that provided urine sample testing and billed insurance companies for their services. C-Lab, DB-Lab, and O-Lab all operated out of the same Florida address.

9. Jessie Peters, charged elsewhere, was employed with or a partner in C-Lab, DB-Lab, O-Lab, and AD-Lab. When Ramesh Sarvaiya and defendant DOMINICK BRACCIA ordered extensive and medically unnecessary laboratory testing on urine samples of Liberation Way patients that were sent to C-Lab and DB-Lab, Person #1 and Person #2 agreed with Peters that Peters would send a financial kickback to Person #1 and Person #2.

10. IBC and FEHBP Blue Cross plans were in "out-of-network" status, that is, providers not participating under the insurance plans, for insureds who utilized Liberation Way services, and, as such, the Health Care Benefit Programs paid significantly higher fees for their

insureds who utilized Liberation Way services and testing by laboratories to which Liberation Way sent the urine samples of the patients.

11. Based on the fraudulent claims that defendant DOMENICK BRACCIA conspired to cause to be submitted to the Health Care Benefit Programs, the Health Care Benefit Programs made payments to Liberation Way, defendant BRACCIA, Florida laboratories, and insured individuals for medical services that defendant BRACCIA did not actually provide. Some of the fraudulent claims filed with IBC were ostensibly on behalf of patients who were participants in employee health plans covered by ERISA (Employee Retirement Income Security Act).

### The Conspiracy

12. From in or about July 2015 through in or about December 2017, in the Eastern District of Pennsylvania and elsewhere, defendant

### DOMENICK BRACCIA

conspired and agreed, with others known and unknown to the United States Attorney, to knowingly and willfully execute a scheme to defraud health care benefit programs, and to obtain money and property of health care benefit programs by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by causing to be submitted fraudulent health care insurance claims, in violation of Title 18, United States Code, Section 1347.

### Manner and Means

13. It was part of the conspiracy that Person #1, Person #2 and Person #3

founded and designed Liberation Way specifically to operate in an "out-of-network" status for private insurers, thereby amassing large amounts of money in a short amount of time. It was further part of the scheme to target and recruit patients who either had policies with the Health Care Benefit Programs, or for whom a premium policy for health care benefits could be obtained from IBC.

14. Defendant DOMENICK BRACCIA was an investor in Liberation Way, and was a significant equity partner who stood to gain financially from increased business and billing at Liberation Way. Defendant BRACCIA was the sole medical doctor on staff at all Liberation Way facilities and purported to be the overseeing doctor for all medical care at the three Liberation Way facilities. However, defendant BRACCIA did not even see many of the patients at the various facilities, never even going to the Bala Cynwyd location, though the Health Care Benefit Programs were fraudulently billed for defendant BRACCIA's purported medical care and treatment.

15. Contrary to medical standards, defendant DOMENICK BRACCIA signed blank forms and orders for urine testing and for prescriptions, and relegated the responsibility of medical care and decisions about appropriate medical testing, to other persons at the various Liberation Way facilities who were not medical doctors.

16. Defendant DOMENICK BRACCIA participated in the ordering of urine testing on patients at Liberation Way and agreed with Person #1 and Person #2 to ship the urine samples to Jessie Peters' laboratories in Florida. Contrary to medical standards, defendant BRACCIA ordered that these urine samples be tested for a large, and correspondingly expensive,

array of laboratory tests, without regard to the individualized needs of the Liberation Way patients.

17. Person #1 instructed staff at Liberation Way to obtain frequent urine samples from Liberation Way patients, regardless of medical need, in order to maximize billing at the laboratories associated with Jessie Peters. Contrary to medical standards, defendant DOMENICK BRACCIA pre-signed blank forms for urine testing for C-Lab and O-Lab and provided those pre-signed forms to staff to fill out. Person #1 also sometimes instructed staff at Liberation Way to forge the patients' signatures on the urine testing form.

18. Pursuant to orders for urine testing by defendant DOMENICK BRACCIA and Ramesh Sarvaiya, the laboratories associated with Jessie Peters tested each urine sample of Liberation Way patients for a large array of tests and billed the Health Care Benefit Programs for these tests. Testing can be either "presumptive" or "definitive." Presumptive testing determined the drug that was in the patient's system. Definitive, also known as qualitative, testing determined the exact drug, and how much of it was in the sample.

19. Defendant DOMENICK BRACCIA, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to the Health Care Benefits Programs for medical services that were not provided by defendant BRACCIA.

20. Defendant DOMENICK BRACCIA, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to the Heath Care Benefit Programs for urine tests and other tests without determining the medical need for the tests, but falsely asserting that they were all medically necessary.

21. As a result of this fraudulent scheme, defendant DOMENICK BRACCIA caused to be submitted more than $9.5 million in fraudulent claims to the Health Care Benefit Programs and caused the Health Care Benefit Programs to incur losses of approximately $2,484,864.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant

**DOMENICK BRACCIA,**

and others known and unknown to the United States Attorney committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. In or about the Summer of 2015, Person #1 and Person #3 approached defendant DOMENICK BRACCIA and solicited him to be both an investor in Liberation Way and the staff doctor for Liberation Way patients.

2. In or about the summer of 2015, defendant DOMENICK BRACCIA provided money for the start-up Liberation Way, becoming a significant equity owner in Liberation Way.

3. From in or about July 2015 through in or about December 2017, defendant DOMENICK BRACCIA purported to be the "medical director" and overseeing doctor for all Liberation Way patients at the Yardley, Pennsylvania location, though he spent only a few hours a week at that location in the first few months, and, once the Fort Washington Location opened in August of 2016, no longer went to the Yardley location.

4. From in or about June 2016 through in or about December 2017, defendant DOMENICK BRACCIA purported to be the "medical director" and overseeing doctor for all Liberation Way patients at the Bala Cynwyd, Pennsylvania location, though he never went to the Bala Cynwyd location. Nonetheless, Liberation Way billed the Health Care Benefit Programs for medical care purportedly provided by and for medical tests ordered by defendant BRACCIA for patients at the Bala Cynwyd location.

5. From August 2016 through in or about December 2017, defendant DOMENICK BRACCIA purported to be the "medical director" and overseeing doctor for all Liberation Way patients at the Fort Washington, Pennsylvania Liberation Way location, but only attended to some patients at the Fort Washington, Pennsylvania location.

6. On or about June 30, 2016, defendant DOMENICK BRACCIA, on behalf of Liberation Way, signed a "Provider Acknowledgement and Consent for Predetermined Custom Profile" with C-Lab, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients, averring that such tests for all patients was medically necessary.

7. In or about fall 2016, defendant DOMENICK BRACCIA signed blank C-Lab "Physician Diagnostics Order Laboratory Testing" forms, filling in advance the diagnostic code, and provided the pre-signed blank forms for other non-doctor personnel at Liberation Way to use with patients that defendant BRACCIA did not see.

8. On or about November 14, 2016, defendant DOMENICK BRACCIA, on behalf of Liberation Way, signed a "Urine Drug Testing Physician Standing Order" with O-Lab, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients at the Yardley location, averring that such tests for all patients was medically necessary.

9. On or about November 25, 2016, defendant DOMENICK BRACCIA signed blank O-Lab "Allergy Testing Physician Diagnostic Order" forms, filling in advance the diagnostic code, and provided the pre-signed blank forms for other non-doctor personnel at Liberation Way to use with patients that defendant BRACCIA did not see in order to conduct "allergy testing" on patients seeking treatment for addiction.

10. In or about December of 2016, defendant DOMENICK BRACCIA signed a blank O-Lab "Urine Drug Testing Physician Diagnostics Order" form, filling in advance the diagnostic code, and provided the pre-signed blank form for other non-doctor personnel at Liberation Way to use with patients that defendant BRACCIA did not see.

11. On or about December 5, 2016, defendant DOMENICK BRACCIA, on behalf of Liberation Way, signed a "Urine Drug Testing Physician Standing Order" with O-Lab, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients at the Bala location, averring that such tests for all patients was medically necessary.

12. From in or about November 2016 through December 2017, defendant DOMENICK BRACCIA signed, and otherwise authorized, orders for urine tests for Liberation Way patients he never saw or treated, falsely certifying, and allowing to be falsely certified, that defendant BRACCIA had seen the patient and that the tests were medically necessary for his continued treatment of the patients.

13–39. From in or about June 2016 through in or about November 2017, defendant DOMENICK BRACCIA caused the below fraudulent insurance claims for purported medical care, among many others, to be submitted on or about the date noted, to the below-noted Health Care Benefits Programs, which paid for medical care purportedly provided by defendant BRACCIA at the Liberation Way Bala Cynwyd location, for the patient identified by initials, where defendant

BRACCIA never saw or evaluated the patient in any way, and which were, thus, not medically necessary:

| OVERT ACT # | ON OR ABOUT DATE SUBMITTED | PATIENT INITIALS | APPROX. AMOUNT BILLED | APPROX. AMOUNT PAID | HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|---|
| 13. | 06-20-2016 | K.K. | $1,110 | $555 | IBC |
| 14. | 07-20-2016 | S.G. | $1,110 | $550 | IBC |
| 15. | 08-20-2016 | M.G. | $1,110 | $555 | IBC |
| 16. | 11-11-2016 | J.C. | $3,100 | $1,798 | IBC |
| 17. | 11-17-2016 | J.H. | $3,100 | $1,550 | IBC |
| 18. | 12-06-2016 | G.P. | $3,100 | $2,015 | FEHBP |
| 19. | 12-08-2016 | K.G. | $3,100 | $1,798 | IBC |
| 20. | 01-03-2017 | J.M. | $1,110 | $834 | IBC |
| 21. | 01-24-2017 | G.P. | $1,110 | $721 | FEHBP |
| 22. | 02-20-2017 | N.F. | $3,100 | $3,100 | IBC |
| 23. | 03-13-2017 | R.S. | $3,100 | $575 | IBC |
| 24. | 04-17-2017 | M.R. | $1,110 | $1,043 | IBC |
| 25. | 04-20-2017 | S.N. | $1,110 | $1,043 | IBC |
| 26. | 05-17-2017 | J.B. | $2,970 | $1,485 | IBC |
| 27. | 05-19-2017 | P.B. | $2,970 | 1,782 | IBC |
| 28. | 06-15-2017 | S.N. | $3,100 | $2,331 | IBC |
| 29. | 06-26-2017 | A.B. | $3,100 | $3,100 | IBC |
| 30. | 07-03-2017 | B.C. | $3,100 | $2,015 | FEHBP |
| 31. | 07-12-2017 | E.B. | $3,100 | $2,015 | IBC |
| 32. | 08-16-2017 | B.M. | $3,100 | $1,736 | IBC |
| 33. | 08-29-2017 | A.S. | $3,100 | $2,015 | IBC |
| 34. | 09-01-2017 | C.B. | $3,100 | $1,705 | IBC |
| 35. | 09-08-2017 | S.D. | $1,110 | $610 | IBC |
| 36. | 10-12-2017 | S.N. | $1,400 | $1,400 | IBC |
| 37. | 10-24-2017 | A.S. | $3,100 | $1,550 | IBC |
| 38. | 11-13-2017 | M.W. | $3,100 | $2,015 | FEHBP |
| 39. | 11-22-2017 | B.R. | $3,100 | $1,395 | IBC |

40–69. From in or about November 2016 through in or about December 2017, defendant DOMENICK BRACCIA caused the below fraudulent insurance claims for laboratory tests, among many others, to be submitted to IBC on or about the date noted, from the laboratory noted, which caused IBC to pay for urine testing services for the patient identified by initials, where defendant BRACCIA never saw or evaluated the patient in any way, and which were, thus, not medically necessary:

| OVERT ACT # | ON OR ABOUT DATE SUBMITTED | PATIENT INITIALS | APPROX. AMOUNT BILLED | APPROX. AMOUNT PAID | LABORATORY WHO SUBMITTED CLAIM TO IBC |
|---|---|---|---|---|---|
| 40. | 11-01-2016 | B.T. | $1,844 | $1,568 | C-Lab |
| 41. | 11-08-2016 | A.B. | $1,844 | $1,568 | C-Lab |
| 42. | 12-01-2016 | A.C. | $1,844 | $184 | O-Lab |
| 43. | 12-01-2016 | E.R. | $1,844 | $955 | O-Lab |
| 44. | 12-15-2016 | B.B. | $1,800 | $37 | O-Lab |
| 45. | 01-03-2017 | K.W. | $1,844 | $955 | O-Lab |
| 46. | 01-17-2017 | G.O. | $1,800 | $39 | O-Lab |
| 47. | 02-15-2017 | S.B. | $1,800 | $79 | O-Lab |
| 48. | 02-16-2017 | A.C. | $1,994 | $144 | O-Lab |
| 49. | 03-02-2017 | D.G. | $1,994 | $1,994 | O-Lab |
| 50. | 03-03-2107 | E.R. | $1,994 | $1,994 | O-Lab |
| 51. | 04-04-2017 | S.B. | $1,994 | $96 | O-Lab |
| 52. | 04-12-2017 | S.F. | $1,404 | $511 | AD-Lab |
| 53. | 04-12-2017 | N.C. | $1,404 | $112 | AD-Lab |
| 54. | 05-05-2017 | E.R. | $1,404 | $1,404 | AD-Lab |
| 55. | 05-09-2017 | S.N. | $1,806 | $1,715 | AD-Lab |
| 56. | 06-05-2017 | S.D. | $1,806 | $160 | AD-Lab |
| 57. | 06-08-2017 | K.W. | $1,806 | $1,405 | AD-Lab |
| 58. | 07-13-2017 | K.K. | $2,468 | $204 | AD-Lab |
| 59. | 07-14-2017 | L.J. | $1,806 | $233 | AD-Lab |
| 60. | 08-03-2017 | S.M. | $1,806 | $112 | AD-Lab |
| 61. | 08-17-2017 | S.N. | $1,806 | $1,405 | AD-Lab |
| 62. | 09-01-2017 | K.W. | $1,806 | $1,405 | AD-Lab |
| 63. | 09-04-2017 | S.D. | $1,806 | $160 | AD-Lab |
| 64. | 10-12-2017 | S.N. | $1,806 | $1,715 | AD-Lab |
| 65. | 10-18-2017 | D.B. | $1,806 | $160 | AD-Lab |

| 66. | 11-03-2017 | S.M. | $1,806 | $160 | AD-Lab |
| 67. | 11-15-2017 | D.B. | $1,806 | $160 | AD-Lab |
| 68. | 12-01-2017 | B.B. | $1,806 | $80  | AD-Lab |
| 69. | 12-07-2017 | A.B. | $1,806 | $160 | AD-Lab |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 371 set forth in this indictment, defendant

### DOMENICK BRACCIA

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, including but not limited to the sum of $135,000.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court; or

    d. has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

for _[signature]_
WILLIAM M. MCSWAIN
United States Attorney