**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **v.** | **NO.  19-202** |
| **DOMENICK BRACCIA** | |

## MEMORANDUM OPINION

Defendant Domenick Braccia moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by the COVID-19 pandemic.  For the reasons that follow, his motion will be granted.

### I.    BACKGROUND

Braccia is currently serving a sentence of thirty-seven months for conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 371.  Braccia was the medical director and sole treating physician for Liberation Way, a set of three for-profit drug treatment facilities in Pennsylvania.  The founders[1] created Liberation Way as a scheme to defraud insurance companies for their personal profit.  Specifically, Liberation Way ordered frequent, high-priced, and medically unnecessary urine tests of patients, and accepted kick-backs from the private lab performing and likewise profiting from the tests.  In furtherance of this conspiracy, Braccia signed blank forms and patient orders claiming the tests were medically necessary, without seeing or treating the patients.  Non-physician personnel would later fill out the forms without Braccia's professional oversight, using them to order the medically unnecessary urine tests.  As a result, insurance companies were fraudulently billed millions of dollars for unnecessary medical

---

[1] Braccia was not one of the founders.

care.

On May 9, 2019 Braccia pled guilty to one count of conspiracy to commit healthcare fraud. On September 20, 2019, he was sentenced to thirty-seven months' imprisonment. Braccia has since served approximately seventeen months of his sentence, including credit for good conduct. He is currently serving his sentence at FCI Fort Dix.

Braccia requested compassionate release from the warden of FCI Fort Dix on November 3, 2020 and has not heard back. On December 31, 2020, he filed this motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the following medical conditions: essential hypertension, hypertensive heart disease, severe obstructive/central sleep apnea, hyperlipidemia, obesity, anxiety disorder, unspecified back and neck pain, glaucoma, prediabetes, supraventricular tachycardia (SVT), inguinal hernia, and left ventricular hypertrophy (LVH). The Government opposes his motion, arguing that he has failed to demonstrate an extraordinary and compelling reason for his release and that the factors set forth in 18 U.S.C. § 3553(a) weigh against his release.

## II.  DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . ."). Specifically, provided the defendant has exhausted his administrative remedies, section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a

reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement essentially mirrors this language, adding that a sentence reduction may be granted only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(A)(2).

Because Braccia has exhausted his administrative remedies by unsuccessfully seeking compassionate release from the warden of FCI Fort Dix,[2] his sentence may be reduced if: 1) extraordinary and compelling circumstances warrant such a reduction, 2) he is not a danger to the safety of another person or to the community; and, 3) release is appropriate in consideration the relevant factors set forth in Section 3553(a).

### A.    Extraordinary and Compelling Circumstances

While Section 3582 does not define "extraordinary and compelling" circumstances that warrant relief, the Sentencing Commission's policy statement elaborates on the term in an application note. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(D). According to U.S.S.G. § 1B1.13, a defendant's serious physical or medical condition is "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *Id.* It is the defendant's burden "to prove extraordinary and compelling reasons exist." *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020). Braccia's medical conditions, as described in his motion for compassionate release and supported by his medical records,[3] when considered in

---

[2] *See* 18 U.S.C § 3582(c)(1)(A) (explaining that a defendant may bring a motion for compassionate release pursuant to this Act after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility).

[3] Braccia asserts that he was diagnosed with left ventricular hypertrophy (LVH) and hypertensive heart disease before he was incarcerated and that these are underlying medical conditions that can cause a

light of his age and the COVID-19 outbreak at FCI Fort Dix, present an extraordinary and compelling justification for his release.

Turning first to Braccia's weight, he has a body mass index (BMI) slightly above 30, which the Center for Disease Control (CDC) classifies as obese. *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 23, 2020). The CDC warns that obesity is an underlying medical condition that place a person at an increased risk of severe illness in the event of a COVID-19 infection. *See also United States v. Nunez*, 2020 WL 5237272, at *4 (E.D. Pa. Sept. 1, 2020) (citing to research showing that "high BMI and obesity are major risk factors for COVID-19 severity and hospitalizations," including a study "identifying obesity as one of the most common comorbidities amongst hospitalized COVID-19 patients").

Braccia also suffers from essential hypertension, or high blood pressure. He is prescribed amlodipine, propranolol, and hydrochlorothiazide for this condition. The CDC has indicated that having high blood pressure might increase the risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*. Additionally, a study of 5,700 COVID-19 patients from the onset of the pandemic in New York City found that hypertension was the most common comorbidity, with nearly 57% of those hospitalized suffering this ailment. *See* Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area*, JAMA (Apr. 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/276584; *see also United States v. Pabon*, 458

_____

serious COVID-19 outcome. Because these disorders are not corroborated by his FCI Fort Dix medical records or the additional records attached to Braccia's motion, they will not be considered.

F. Supp.3d 296, 299, 302 (E.D. Pa. 2020) (discussing research data from several sources indicating that hypertension is a significant comorbidity among COVID-19 patients); Shikha Garg *et al., Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019*, Morbidity and Mortality Weekly Report (Apr. 17, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_cid=mm6915e3_w (finding that hypertension and obesity were the two most common underlying medical conditions of patients hospitalized with COVID-19 in March 2020 in a study covering fourteen states).

Furthermore, Braccia has severe obstructive sleep apnea. According to the sleep apnea analysis attached to Braccia's motion, he suffers from severe sleep apnea with significant oxygen desaturation. He therefore is prescribed a continuous positive airway pressure (CPAP) machine to deliver oxygen while he sleeps. However, FCI Fort Dix will not permit persons in COVID-19 quarantine, including Braccia, to use CPAP machines due to concerns about spreading the virus. The Government does not dispute the existence of such a policy at FCI Fort Dix.

At the time of his motion, Braccia had been in quarantine for six weeks. There are still seventy-one active cases of COVID-19 at FCI Fort Dix, which according to the Bureau of Prisons has experienced several large outbreaks of the virus and seen the most COVID-19 infections of any federal facility in the country. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 29, 2021). A staggering 1,424 people incarcerated at Fort Dix have been infected and recovered from COVID-19, and unfortunately one person recently succumbed to the virus. *Id.* Despite the government's argument to the contrary, it is therefore highly likely that Braccia will remain in quarantine, or (even if quarantine is lifted for some period of time) will again be required to quarantine as the pandemic continues to rage, all while being denied the prescribed medical treatment for his sleep apnea.

Because FCI Fort Dix's policy precludes providing Braccia with a CPAP machine to properly treat his severe obstructive sleep apnea, this condition "substantially diminishes [his] the ability . . . to provide self-care within the environment of a correctional facility" during the COVID-19 pandemic.  U.S.S.G. § 1B1.13.[4]

Braccia suffers from several other treatable ailments, none of which would entitle him to compassionate release, but which are relevant to understanding the full scope of Braccia's poor health and medical needs.  Braccia has hyperlipidemia, or high cholesterol, which he treats with atorvastatin.  He has prediabetes.  He experiences chronic pain and numbness in his back, neck, feet, and fingers.[5]  He was recently diagnosed with an inguinal hernia, but has been unable to schedule a surgical consult due to the COVID-19 pandemic.  *See* Harvard Health Publishing, *Inguinal Hernia*, Harvard Medical School (July 2019), https://www.health.harvard.edu/a_to_z/inguinal-hernia-a-to-z (explaining that most hernias that cause symptoms or become enlarged require surgery).  Finally, Braccia's medical records and pre-sentence investigation report corroborate his account that he has episodes of supraventricular tachycardia (SVT), an abnormally fast heartbeat.  Most recently, he reported to the medical staff at Fort Dix dizziness, fluttering in his chest, and sweating that he believed was a bout of SVT. The episode resolved without further medical treatment in about forty-five minutes.  Braccia does not require any ongoing treatment for SVT, although he has been hospitalized for the condition in the past.

---

[4] The Government cites to decisions from other district courts finding that sleep apnea is not an extraordinary and compelling justification for release.  But the decision here is not premised on Braccia's sleep apnea:  the concern is that he is being deprived of treatment for his condition because of a decision made by the prison in the context of its legitimate efforts to control the pandemic.

[5] The pain in his neck and back is related in part to swelling in his upper back, which began in 2018 and has increased in size to form solid mass as of July 2020.

Braccia's significant health issues are especially concerning in light of his age; Braccia is fifty-nine years old.  The CDC has published statistics showing that COVID-19 infected persons in the 50-64-year-old age bracket are four times more likely to be hospitalized and thirty times more likely to die than those in the 18-29-year-old comparison group.  *See* Center for Disease Control, *Covid-19 Hospitalization and Death by Age,* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Aug. 18, 2020); *see also Pabon*, 458 F. Supp.3d at 302 (explaining that a fifty-four-year-old petitioner's age "is yet another contributing factor to the increased risk he faces from COVID-19" that makes his circumstances extraordinary and compelling.)

The Government suggests that none of Braccia's medical conditions standing alone constitute  an extraordinary and compelling reason for release, despite the COVID-19 pandemic. Nonetheless, Braccia suffers from his various medical conditions in combination.  *See* CDC, *People with Certain Medical Conditions* ("The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.").  When considered together, in tandem with his age and the situation at FCI Fort Dix due to the COVID-19 pandemic (which have prevented him from using a medical device necessary to control one of his ailments), Braccia's medical condition constitutes a basis for release.

**B.      Section 3142(g) and Section 3553(a) Factors**

Section 3582(c) requires consideration of "the factors set forth in section § 3553(a)[6] to

---

[6] Section 3553(a) directs a sentencing court to consider, as most relevant here:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;

the extent that they are applicable[.]"  18 U.S.C. § 3582(c)(1)(A).  Moreover, the Sentencing

Commission's policy statement provides that a sentence reduction may only be granted if "[t]he

defendant is not a danger to the safety of any other person or to the community, as provided in 18

U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Because the factors outlined in Section 3142(g)[7]

significantly overlap with Section 3553(a), the factors will be considered together as appropriate.

Both Section 3553(a) and Section 3142(g) require an evaluation of the nature and

circumstances of the offense and history and characteristics of the defendant.  Relatedly, Section

3142(g) takes into consideration "the nature and seriousness of the danger to any person or the

community that would be posed by the person's release," and Section 3553(a) expresses the need

for the sentence imposed "to protect the public from further crimes of the defendant."  Braccia

was convicted of one count of conspiracy to commit healthcare fraud.  This was his first and only

conviction.  It was not a crime of violence or terrorism, and did not involve any weapons,

---

       (C) to protect the public from further crimes of the defendant; and
       (D) to provide the defendant with needed educational or vocational training, medical
       care, or other correctional treatment in the most effective manner.

[7] As relevant in the post-conviction context, Section 3142(g) takes into account:

    (1)  the nature and circumstances of the offense charged, including whether the offense is a crime
       of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor
       victim or a controlled substance, firearm, explosive, or destructive device;

    (3) the history and characteristics of the person, including--
       (A) the person's character, physical and mental condition, family ties, employment,
       financial resources, length of residence in the community, community ties, past conduct,
       history relating to drug or alcohol abuse, criminal history, and record concerning
       appearance at court proceedings; and
       (B) whether, at the time of the current offense or arrest, the person was on probation, on
       parole, or on other release pending trial, sentencing, appeal, or completion of sentence for
       an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed
       by the person's release.

controlled substances or minor victims.  Braccia has no history of violence and has committed no

disciplinary infractions while incarcerated.  His risk of recidivism, given his age, poor health,

and model conduct while incarcerated is low.  Upon release, Braccia will be confined to his

Pennsylvania home, where he will reside with his wife.  *See United States v. Ladson*, 2020 WL

3412574, at *8-10 (E.D. Pa. June 22, 2020) (concluding defendant's strong family ties and stable

home weighed against finding defendant a danger to the community). Thus Braccia's release

would not pose a danger to the safety of any person or to the community.

Certainly, the seriousness of Braccia's offense must not be minimized.  They were not

only fueled by greed but exhibited gross disregard for the health and well-being of the vulnerable

patients that Liberation Way served.  While Braccia was not the architect of the fraudulent

scheme, he acquiesced in the fraud by allowing medical forms bearing his signature to be used as

blank checks for medically unnecessary tests.  What's more, he provided these forms without

seeing or treating the patients who were not only forced to produce medically unnecessary urine

samples, but were deprived of the medical treatment that Liberation Way purported to offer.

Braccia abused the trust that Liberation Way patients and their families placed in him as a

medical provider.  Following their experience at Liberation Way, patients suffered not only

financial consequences from their resulting medical bills, but also a lingering distrust towards

drug rehabilitation centers and the medical community in general.

Nevertheless, the history and characteristics of the defendant and in particular the need to

provide medical care in the most effective manner weigh heavily in favor of granting Braccia's

motion and ultimately tip the scales in his favor.  *See* 18 U.S.C. § 3553(a)(2)(D); *see also Nunez*,

2020 WL 5237272, at *6 n.2 (explaining that while the Section 3553(a) factors may have

initially supported a petitioner's sentence, "the significant change of circumstances created by

COVID-19 warrants a closer look at the purposes for [petitioner's] punishment balanced with the risk he faces due to his medical condition and potential exposure to COVID-19."). As aforementioned, this was Braccia's first conviction and he has no history of violence. At his sentencing, Braccia accepted responsibility for his wrongful actions, expressed remorse, and apologized to the victims. He paid his restitution in full. He has not only been a model prisoner but, while incarcerated, has also demonstrated a desire to rehabilitate and rejoin society by completing a drug treatment program, taking personal finance classes, and participating in the UNICOR work placement program. *See id.* at *5 (discussing how compassionate release petitioner's lack of disciplinary record, acquisition of GED, and attempted enrollment in drug abuse program "show[] rehabilitation and the desire to become a productive member of the community."). Upon release, Braccia will reside with his wife of thirty years and anticipates receiving additional support from his extended family, and friends.

Central to this decision is that Braccia is within a vulnerable age group and suffers from a serious medical issues that the prison, which has experienced the most rampant outbreak of COVID-19 of all the BOP facilities in the country, has specifically declined to address to wit the provision to Braccia of access to a prescribed CPAP machine.

An appropriate order follows.


February 1, 2021                           BY THE COURT:


                                           */s/ Wendy Beetlestone*
                                           _____
                                           **WENDY BEETLESTONE, J.**